COURT OF APPEALS OF WEST VIRGINIA. 205

Jan'y Term, Fox, adm'r, vs. Jones and Wife. 1866.

## Wheeling.

Absent, HARRISON, J.*

## FOX, ADM'R. *vs.* JONES AND WIFE.

### January Term, 1866.

1. Where a deposition has been taken in a cause and excepted to, it may be retaken by the party desiring to use it, before the cause is heard, without an order from court for that purpose.

2. A gift of choses in action from a husband to his wife, although void at law, will be sustained by a court of equity, when it is not unreasonable in its provisions nor in fraud of creditors.

3. The intervention of a trustee is not necessary to make a gift or settlement to a wife, whether the estate is derived from the husband or a stranger : and the husband during his lifetime and his personal representative after his death, will be treated as a trustee for the wife, of such estate, and be enjoined from making any legal disposition of it in contravention to the trust.

4. No particular form of words is necessary to create a separate estate in the wife.

5. A case in which a gift of choses in action, by a husband to a wife, is held to be a valid one, within the meaning of the foregoing principles.

*William Jones* and *Mary Jones*, his wife, exhibited a bill in chancery in the circuit court of *Kanawha* county, at the May rules, 1864, alleging that the female complainant was formerly the wife of *James Wilkinson* ; that *Wilkinson* during his lifetime had been part owner of the *Kanawha Flouring Mill,* situated in *Charleston* ; that in the year 1859 he had sold out his interest to *William J. Rand,* another part owner, who had immediately re-sold to one *Solomon Minsker* and took his obligations for the purchase money ; which obligations *Rand* endorsed and delivered to *Wilkinson* for the purchase money owing to him ; that the obligations were three in number, bearing date the 6th day of May, 1859, one for the sum of 1,060 dollars payable in twelve months, the second

*He was absent on account of sickness, and the remaining judges called *N. Harrison,* judge of the IX circuit, to the bench.

for the sum of 1,120 dollars due in twenty-four months, and the last for the sum of 1,180 dollars due in thirty-six months; the first one subject to a credit of 116 dollars paid May 11th, 1860; that *Wilkinson* was a person of dissipated habits for several years previous to his death, and that there were no children, issue of the female complainant and *Wilkinson*; that she had ministered to her husband's wants and necessities as a wife was bound to do, though in much sorrow and trouble on account of his dissipated habits; that although of dissipated habits, he always exhibited great kindness towards her, and frequently told her he intended to give her the obligations on *Minsker* assigned to him by *Rand*; that he, accordingly, about the last of May or the first of June, 1860, brought the obligations to her and placed them in her possession and stated that he gave them to her, and they were now her own property and that she could do as she pleased with them; that the obligations were in her own possession and held by her as her own individual property ever since that period, and that her deceased husband, *Wilkinson*, never set up any claim thereafter to said obligations; that at the time of said gift *Wilkinson* had ample property to pay all his debts, and left more than sufficient property at his death to meet all his liabilities and leave a surplus of three or four thousand dollars, and that his debts at his death would not exceed two hundred dollars; that the female complainant instituted suit on the law side of the court, on the obligations, in the name of *William J. Rand*, for her use and benefit, and that at the April term, 1864, of the circuit court, after a rule to show cause against it, the administrator of her deceased husband's estate, *William Fox*, said *Fox* was substituted in the place of her, and the suit ordered to be proceeded in for the use and benefit of the administrator; that the gift was a *bona fide* one, made without any undue influence exercised by her over her husband, and that the same was not detrimental to the rights of creditors. She prayed that *Fox*, *Rand* and *Minsker* be made parties defendant, and that *Fox*, the administrator, should be directed to collect the obligations for her use and benefit.

*Fox* answered the bill alleging that he was administrator, as stated in the bill; that he had frequently endeavored to obtain possession of the obligations in order that he might administer upon the same as part of the estate of his decedent, but had been unable to do so, the female complainant refusing to deliver them to him; that at the time of the bringing of the suit by her, he was about to take steps to obtain them by law, when he procured the order of the court to be substituted for her as plaintiff: he denied that there was any such gift as could be set up in law or equity; that the wife could not be the recipient of such a gift without the intervention of a trustee; that after the gift, *Wilkinson* received and lived on the monies secured by the obligations in cash and supplies from the mill, and claimed the fund arising from the collection of the obligations as belonging to the estate, to be devoted to the payment of debts so far as the same was necessary, and the rest to be distributed to those entitled thereto.

*Minsker* answered alleging that he had an account against *Wilkinson* for money and goods and chattels amounting to 622 dollars and 65 cents, and also against the female complainant for like articles furnished her after the death of *Wilkinson*; and that he was not interested in the suit at law, but asked that his accounts, which he filed as exhibits, be allowed in the final settlement.

The depositions of *Mary Slack*, *Mary Fox* and *William L. Hindman*, were taken by the complainant on the 7th day of May, 1864, and were excepted to by the defendant, *Fox*, at the time, upon the ground of informality in the taking and irregularity in the questions. Subsequently, on the 20th day of September, 1864, the depositions of *Mary Slack*, *Mary Fox* and *William A. Hindman*, were again taken.

*Mary Slack* proved that she had been acquainted with *James Wilkinson* and his wife in 1850, and had visited them frequently; that *Wilkinson* was given to intoxication at times and she had heard him say that there should be plenty to take care of his wife; that she saw him give his wife the bonds, and told her to make use of them in any way she

saw proper; that she meant (in response to an inquiry), "the bonds that are now in controversy between *William Jones* and wife, and *William Fox*, administrator;" the bonds or notes were so given to her about the last of May, 1860; that *Mary Fox* was then present, and that *Wilkinson* was sober, and, as far as she knew, capable of transacting business. *Mary Fox* proved that she had known *Wilkinson* and his wife for about seven years, and that the former died September 15th, 1862; that he gave to his wife bonds or notes in deponent's presence and in the presence of *Mary Slack*, but she did not recollect when it was, and that he was not angry nor intoxicated at the time.

*Hindman* proved that he was a boarder in the house of *Wilkinson* and wife in 1859, and that he paid his bills to the wife, after his first one; that they had no children, and that the husband was very intemperate, in bad habits, and very disagreeable whilst drinking, in his manner, and that his wife administered his medicine, and all hours of the night and day gave him an unusual amount of care and attention in providing extra meals, &c.

To the reading of these depositions the defendant, *Fox*, by his counsel excepted, because the depositions of each of them had been before taken and filed in the cause, and no leave had been granted by the court to retake them: also, because *Mary Fox* was the wife of the defendant, *William Fox*.

The court rendered a decree at the October term, 1864, overruling the exceptions to the depositions, and holding that the gift of the obligations was such a provision for the wife as a court of equity ought to sanction, it being reasonable, and not in fraud of creditors. The defendant *Fox*, was enjoined from enforcing or receiving payment of the judgment at law, and *Minsker* was ordered to pay the same to the complainants.

*Fox* appealed to this court alleging as error in the decree, that the depositions ought not to have been read and heard, and that the testimony was insufficient, even if allowed to

warrant the conclusion that *Wilkinson* designed a gift of the obligations in controversy.

The counsel of both parties submitted notes and subsequently added to them, but for convenience and brevity they are inserted under one head respectively.

*B. H. Smith*, for the appellant.

By reference to the decree it will appear that it assumes the following facts as proved:

*First*, That *Wilkinson* gave to his wife the notes in the bill mentioned, to be kept and collected by her for her own separate use, and that he did not exercise any act of ownership over them afterwards.

*Mary Slack* says she saw him give her those bonds, and use them as she saw proper. This does not identify the subject of the gift. Whose bonds were they? What amount? How many bonds? This uncertainty is attempted to be rectified by the answer to the next question. That is, that they were the bonds in controversy between Mrs. *Jones* and *Fox*, not between Mr. and Mrs. *Jones*, but Mrs. *Jones* and *Fox*. She does not say how they were in controversy, by suit or otherwise, in law or equity; nor in what court; nor does it appear that another suit is not existing; again, there were no bonds in controversy in this suit. The subject here is negotiable promissory notes.

Mrs. *Fox* in detailing what she regarded as what was said by *Wilkinson* when he gave the bonds, uses this language: "he gave them to her, and told her she had to go away and leave him—hence the reason for giving them." It seems from this *Wilkinson* thought there was some compulsion by which she was to leave him. This shows a mental alienation, as we never hear elsewhere of such necessity. When she was to go? Where? or how long she was to stay, or upon what necessity, does not appear. This, in the first deposition of Mrs. *Fox*, but although not repeated in the second, is not there retracted. Again, Mrs. *Fox* talks about the bonds and not the notes. The question propounded in the first deposition by the plaintiff, *Jones*, speaks of

the "bonds in controversy." The question to Mrs. *Fox* in the second deposition is leading—she answers and says, only, yes; but adds Mrs. *Slack* was present. The testimony therefore is uncertain, loose and very flimsey. If such testimony as this by widows is to lay the foundation for a transaction so solemn, and of such magnitude—the title of dead men's property is held by a most slender tenure; I deny, therefore, that the recital in the decree above set out is proven.

Again, the second deposition could not be taken without leave of the court. This is an established rule of the court of chancery and as such, as binding on the court as an act of assembly. The defendant not being required to attend unless taken on leave, and received by the court without leave, it operates as a surprise at the hearing, on the defendant.

*Second,* The residue of the recitals in the decree are found only in the allegations of the bill. There is no such admission in the answer or any proof thereof. Where an answer is filed responding to portions of the bill, and silent as to the residue, the silence of the answer is not an admission of the facts not answered; they must be proved by complainant. See *Coleman* vs. *Line's, ex.*, 4 Rand. 454.

It is material in this proceeding to show that the debts of the estate would not consume all the assets; that the gift was reasonable and not in fraud of creditors. It is manifest from the answer of *Minsker* that the intestate was using this fund for his daily support, &c. But this same question of the gift came up on the rule in the suit at law. In this rule the equitable title of Mrs. *Fox* was put in issue. Mrs. *Jones* answers fully, and sets up her claim to the notes as a gift. She as well as *Fox* offered her evidence, and in the language of the court, "the matters arising upon the rule, being fully heard and considered, it seemed to the court that the said notes, ("were the property of *James Wilkinson* at the time of his death, and constituted a part of his estate, &c., and that the suit was improperly brought, &c:," as a general rule to which there is no exception within my knowledge, a court of law will protect the rights of an

equitable claimant in a suit for his benefit; that such right is uniformly exercised by such court; so will they protect the right of a legal claimant by gift.

In this rule the title to these notes, whether legal or equitable, was adjudged by the court, and the title of the intestate at the time of his death sustained unconditionally. Here there is a judgment of a court of competent jurisdiction, upon the title, which judgment is sought to be reversed by a bill in equity. This can be done only by appeal to this court. I hold this judgment to be final. It is made a part of the answer of *Fox*. The prayer of the bill is to make *Fox* collect the notes for the plaintiff, Mrs. *Jones*. The very thing the court adjudged he should not do. This judgment is relied on by the answer. In this case the law will presume the judgment was sustained by the facts at the trial of the rule. If not, it being a court of law, the facts should have been set out by bill of exceptions.

One other fact, I think worthy of consideration. No indication of a gift of the notes appear by writing. The omission to endorse or assign the notes is a strong presumption against the gift. This would have suggested itself to the most illiterate man.

The counsel for the appellee in his last note takes some objections to positions presented by me. *First,* In relation to the claim presented by *Minsker* in his answer; I hold this to be a sufficient answer to all that, is said. It appears by the answer sworn to, that there is a claim against the estate of over 600 dollars with interest. This is a *fact* shown by the record and may be relied on so far as to show that such an unsettled claim exists, and therefore proves that there is an existing liability claimed against the estate for which it may be adjudged to pay.

The counsel for the appellee answers the authority in 4th Rand., by saying the unanswered allegations of the bill are negative facts. This is a mistake; each and all are strictly affirmative allegations, not only so, they are necessary to sustain the gift, and not one of them proved; one of them is to the effect that she has had them in her possession ever

since they were delivered to her. This essential allegation is unsustained by proof, and in fact is denied by the answer. The respondent avers they were withdrawn from him by Mrs. *Jones.* This important fact in other parts of the answer is substantially denied. I call the special attention of the court to other unanswered parts of the bill to show the error of the counsel for the appellee in stating that they are negative allegations to be disproved by the defendant. They are strictly affirmative and essential to be proved by the plaintiff, which has not been done.

*G. H. Lee,* for the appellees.

Gifts from a husband to the wife will be supported in equity if not prejudicial to creditors. *Slanering* vs. *Style,* 3 P. Wm's. 336, 339; *Bletson* vs. *Sawyer,* 1 Vern., 265; *Lucas* vs. *Lucas,* 1 Atk., 270; *Rich* vs. *Cockell,* 9 Ves. 296, and cases cited in n.; *Walter* vs. *Hooge,* 2 Swanst, Rep., 106; *McLane* vs. *Longlands,* 5 Ves. 78.

If a husband give his wife his whole estate, it would be held unreasonable, and would not be sustained in equity. But if the nature and circumstance of the gift, whether express or implied, are such as to afford no ground to suspect fraud, and it amounts only to a reasonable provision for the wife, equity will support it, though made after marriage; 2 Sto. Eq., § 1375; 2 Kent's Comm. (5th Edit) 103. Though in strict propriety, trustees should be interposed, and usually are, in well considered settlements, yet it has for more than a century been established in courts of equity, that the intervention of a trustee is not indispensable, and that if property be given to a wife before or after marriage for her separate use, without the intervention of trustees, the intention of the parties shall be effectuated in equity, and the wife's interest protected both against the husband and creditors; and the husband shall be held a mere trustee for her, and the trust will be enforced in the same manner as if he were a mere stranger. 2 Sto. Eq., § 1380, and authorities cited in n. 3; 2 Fonbl. Eq. B., 1 ch. 2, § 6, n. (n.) *Porter* vs. *Bank of Rutland,* 19 Vt., 617; *Blanchard* v. *Blood,* 2 Barb., 352.

No particular form of words is necessary to create a trust for the benefit of the wife; it is sufficient if the intent appear to give the property for her benefit, and to exclude the husband. *Stuart* vs. *Kissom*, 2 Barb., 193; *Taylor* vs. *Stone*, 14 Smeade and Marshall, 653. Technical words are not necessary. It is sufficient if it appear expressly or by just implication, that it is designed to be for her exclusive use, the intention will be fully acted on and the rights and interests of the wife sedulously protected in equity. *Darley* vs. *Darley*, 3 Atk., 399; *Stanton* vs. *Hall*, 2 Russ & My., 175; *Newland* vs. *Paynter*, 10 Smith, 377; 2 Sto. Eq., § 1381.

Equity will aid a defective transfer intended to be a present transfer, and probably will enforce an executory agreement upon the inducement of a meritorious consideration; that is to say in favor of a wife or child and against one not standing in one of those relations, such as a brother or collateral relative, or against the person himself contracting, though it may not interfere between persons standing in the same relation upon the same meritorious consideration, that is who are the children, or children and widow of the person whose estate is in question. *Ellis* vs. *Nimmo*, Lloyd and Goolas, Rep., 333, (10 Condensed Eng. Ch. R, 534); *Jeffreys* vs. *Phillip*, 1 Craig & Phillip, 138; (18 Eng. Ch. Rep., 1371.

In *Ellison* vs. *Ellison*, 6 Ves., 656, and *Pulverloft* vs. *Pulverloft*, 18 Ves., 86, Lord *Eldon* evidently inclines to recognize the principle that equity will give aid in the case of a meritorious consideration, in favor of a wife or child. The cases of *Coleman* vs. *Sorrel*, 1 Ves. Jr., 50, recognizes the same principle. In America it is the settled doctrine. *Shepherd* vs. *Bowie*, 6 Maryland, Ch. Rep., 133; (9 Gill, 32); *Harris* vs. *Harris*, 6 Maryland, 635; *McIntyre* vs. *Hughes*, 6 Bibb, 186; *Mahan* vs. *Mahan*, 7 B. Munroe, 579; *Dennison* vs. *Goehring*, 7 Barr. 175; and note of American editors to *Ellison* vs. *Ellison*, 1 Leading Cases in Equity, 236; also in *Jones'* adm'r. vs. *Oberchion, &c.*, 10 Gratt, 261; and the case of *Herr's* appeal, 5 Watts & Sergt., 194, which was a gift of gold and silver and was sustained, although the possession

was not so clearly changed as in this case, because the money was kept after the gift in the house in which the husband and wife continued to live, and in a chest to which both parties had equal access.

These authorities, to which may be added Bright on Husband and Wife, establish the doctrine conclusively, that a gift by a husband to his wife, if reasonable and not to the prejudice of creditors, though void at law, will be set up and sustained in equity; that the intervention of a trustee is not necessary, or if necessary, the husband himself will be treated as a trustee, and that neither the administrator nor distributees of the husband will be permitted to reclaim the subject of the gift upon the mere ground of its invalidity at law. About this doctrine there can be no dispute at this day.

. Now this is not a suit by a creditor of *Wilkinson* claiming that these *Minsker* notes are necessary for the payment of his debt, but a claim by the administrator standing in the mere place of *Wilkinson* himself, and that too without any pretense that there is not sufficient other estate to pay all the debts, or that the proceeds of these notes will be required for that purpose. There is no proof of this kind, nor even any allegations to that effect anywhere made in the case. The only questions, therefore, that can be raised upon this record are first, is the gift of the notes by *Wilkinson* to his wife proven; and secondly, if the gift be proven, is there evidence of any such re-possession of the notes by *Wilkinson*, such exercise of control over them afterwards with the consent of his wife, as would amount to revocation of the gift or a surrender by her of the subject. As to the first question, the gift of the notes is proven by two fair, disinterested and intelligent witnesses. They were present at the very act of the gift, and are wholly disinterested. True, they call the notes of *Minsker*, bonds, but this is no reason for disbelieving that these identical evidences of debt were not transferred. Nothing is, perhaps, more frequently the subject of misnomer than notes and bonds, which are indifferently designated by persons who are not familiar with their technical

structure.   There is no pretense that the gift was unreasonable, certainly no proof of the kind; and upon that subject *Wilkinson* was the best judge.   Having no children he might very reasonably have given the whole of his estate to his wife, and no one but creditors would have a right to complain.   The consideration of the gift too, (if it were necessary to prove a consideration, which it is not,) is shown to be a meritorious one; the performance by her of all the duties of an industrious, frugal and devoted wife.   Such a transaction as this, under the circumstances, should receive the sanction and approval of a court of equity and not its condemnation and reprehension.   Upon the second question there is not a tittle of proof of any revocation of the gift, or surrender of it by the wife.   The only circumstance relied on by the counsel of the appellant in support of this pretension, is that *Wilkinson* got supplies from the mill sold to *Minsker* after he gave the notes to his wife; and for this he relies upon the answer of *Minsker*.   It is well settled that the answer of a defendant is not evidence for or against a co-defendant.   If he be a competent witness his deposition may be taken; but his answer setting up affirmative matter is no evidence of such matter either for his co-defendant or himself, not being responsive to any allegations of the bill. There is, then, nothing in the record to warrant the statement of the counsel, that " *Wilkinson* lived on the notes." *Minsker*, as appears from his answer and conduct, was perfectly willing to furnish the supplies whether credited on the notes or not, and when suit was brought permitted judgment to go against him for the whole amount, excepting a credit given by the plaintiff.   And when made a party to this (the chancery) cause, although he filed his account, is perfectly indifferent whether it is allowed or not.  He only claims that it should be recognized as a debt due from the estate of *Wilkinson*, which he knew to be abundantly good; and if it was not allowed as a credit on the notes, he could recover it out of the residue of the estate.   He offers no proof of his account and it here for the first time appears as a naked claim unsupported, and not in response to any allegations of

the bill. Would it not be extraordinary if such pretensions could be used to defeat the just and equitable claim of a good and faithful wife to the bounty of her husband? And for whose benefit? Not that of *Minsker* who is so indifferent and has had his day in court and failed to file his off-set and produce proof either in the court of law, or in this cause : not for the benefit of any other creditor of *Wilkinson*, for it is not proven or even alleged that there are other creditors whose debts cannot be satisfied without resorting to the proceeds of the *Minsker* notes, but for the benefit of an administrator who is acting with rare vigor in the effort to deprive an honest wife of this act, not of generosity, but justice towards her upon the part of her husband.

No proof is offered to show any surrender of the notes by the female complainant, nor that she ever suffered them to go out of her possession, nor that she ever consented that any portion of their proceeds should be appropriated to the payment of *Minsker's* account. They were never out of her possession until filed with her declaration.

She may admit *Minsker's* account as a credit upon the notes, but after his failure to make defense at law, and to produce proof in this cause, she is not legally required to do so.

The question as to the liability of these notes to pay any claims of creditors against the estate of *Wilkinson*, may hereafter arise upon bill with proper allegations supported by proof, but it cannot arise from anything that is found in this record. The administrator stands in the place of his decedent and cannot be permitted in equity to repudiate the bounty of the latter to his wife at his will and pleasure, without showing any necessity or reason why it should be defeated. The female appellee should be quieted in the enjoyment of the proceeds of these notes by an affirmance of the decree below.

HARRISON, N. J., delivered the opinion of the court.

1. The court is of opinion that the exceptions to the depositions of Mary Fox and Mary Slack, because they were retaken without special permission from the court, is not

well taken. Although, as a general principle or rule of practice, a deposition once taken in a cause cannot be retaken without a special order of the court to that effect, yet the fact that the depositions as first taken in this case were then excepted to, constitutes an exception to the rule and fully authorized the second taking. A party who has taken a deposition which is excepted to for any formal objection, is not compelled to wait the action of the court on such objection; by which (if the exception were sustained) he might not only be delayed, but even deprived entirely of the testimony of the witness should he die pending the question. He may, therefore, well assume, if he chooses, that the objection was properly taken, and proceed at once to remove it by taking the deposition *de novo.*

2. The court is of opinion that there is nothing in the record which shows that Mrs. Fox was the wife of the appellant, and therefore, the objection to her competency as a witness, growing out of the fact of that relation, is not properly a question before the court.

The court is further of opinion from the evidence that, the bonds in question, although void as such at law, were a valid gift in equity from James Wilkinson to the female appellee, who was then his wife; that the gift was perfected by delivery; that it was not unreasonable in its provisions, nor in conflict with the claim of any creditors, and that it was founded upon a meritorious consideration, which has been frequently recognized and sustained in a court of equity. See 2 Story's Eq., § 1374, 1375; *Beard* vs. *Beard,* 1 Atk., 72; *Walker* vs. *Hodge,* 2 Swanst. Rep., 106, 107; *Lucas* vs. *Lucas,* 1 Atk., 270, 271.

The court is further of opinion that the right of a husband, either with or without the intervention of a trustee, to make a proper gift or settlement on his wife, is well established. 2 Story's Eq., § 1380, and the numerous authorities there cited in note 2. Whether the estate is derived from him or from a stranger, the husband during his lifetime, (if no other has been appointed,) will be treated as a trustee for her benefit; and in the event of his death, *quoad* all separate

218          COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Fox, adm'r, vs. Jones and Wife.          1866.

personal estate derived from him during his lifetime, and which properly belongs to the wife in equity, his executors or administrators will be treated as a trustee for the wife, and enjoined from making any legal disposition of the property in contravention of the trust.

No particular form of words is necessary to create a separate estate in the wife. Cl. on Husb. and Wife, 262; Bright's Husband and Wife, ch. 3, § 21; *Taylor* vs. *Stone*, 13 Smeade and Marshall, 655. Although the evidence might have been stronger upon both points, yet the court is of opinion that both the fact and the identity of this gift are sufficiently established in this case to entitle the wife to her recovery.

Without undertaking to settle, in this case, how far the allegations of a bill neither admitted nor denied in the answer are to be taken to be true upon the hearing, the court is of opinion that, the special allegation in this bill that there are no debts against the estate of the decedent to prevent the particular recovery which is sought for, uncontradicted (although unadmitted) by the answer of the administrator, whose duty it is to protect the estate for creditors, and who would be guilty of a *devastavit* if he did not, must be taken to be such admission of assets (at least as to him,) as to supercede the necessity of any further proof upon the subject. There is no legal presumption of indebtedness which precludes the recognition of this gift, until an account is taken. The executor or administrator, if he chooses, may waive the necessity and expense of such an account. The plaintiff upon alleging, as she did in this case, that there were no creditors to dispute her claim, affirmed a negative proposition which she was not required to disprove, at least until denied or the contrary was asserted by the administrator or some other party in interest; which would have constituted affirmative matter to be established by a special account or other proof. The administrator not denying this material allegation must be taken to have admitted it.

For these reasons, the decree of the court below must be affirmed with costs *de bonis testatoris* against the appellant in this court.