# CHARLESTON.

## Good *v.* Good.

Submitted January 11, 1894.—Decided April 11, 1894.

1. HUSBAND AND WIFE—GIFT.

Under section 2, chapter 66, of the Code a married woman could acquire property by gift from her husband in the same manner and to the same extent, as if she were a *feme sole.* This section is amended by section 3, c. 3, Acts 1893.

2. HUSBAND AND WIFE—GIFT.

Such gifts are void as to existing debts of the husband.

3. HUSBAND AND WIFE—WIDOW.

After the termination of the coverture by death the widow may maintain an action of detinue against her deceased husband's personal representative for her separate property unlawfully withheld from her, whether acquired from her husband or others.

C. E. HOGG for plaintiff in error cited Kell. Cont. Mar. Wom. 135, 136, 157; 1 W. Va. 205; Acts 1891, c. 109, s. 1; 13 W. Va. 573, p't 11, Syll.; 11 S. E. Rep. 766; 10 W. Va. 174; Acts 1891, c. 66, s. 1; 90 Am. Dec. 230; 36 Ark. 360; 9 S. E. Rep. 226; 13 Ind. 225; 19 Ia. 236, 242; 20 Hun 472; 19 Hun 358; 9 Am. & Eng. Ency. L. 800; Code, c. 71, s. 1; 30 W. Va. 103; Bl. L. Dict. (Gift) 539.

W. A. PARSONS for defendant in error:

I.—*Detinue is in tort.*—5 Am. & Eng. Enc. Law, 653 (N. 2.)

II.—*Action at law can not be maintained against adminstrator as such, for wrong committed by him.*—54 Ia. 557; 66 Ala. 266; 2 McC. C. C. 332; 1 Holmes C. C. 261; 14 Pet. U. S. S. C. 283, 290: 28 Ohio St. 134, 141; 62 Miss. 390; 70 Me. 308.

III.— *Widow can not maintain detinue against personal representative.*—9 Am. & Eng. Enc. Law, 795 (n. 10) 798, 800 (n. 8) 799 (n. 17); 27 W. Va. 759; *can not sue after termination of coverture.*—24 Am. Rep. 27, 29, 30; 9 Am. & Eng. Ency. 795 ; *can not in equity compel a personal representative to complete an unperfected gift.*—7 Am. & Eng.

Ency. Law, 335 (n. 5); *rights of creditors superior to those of donees.*—5 Am. & Eng. Ency. Law, 307 (n. 1); *plaintiff must show gift to have been valid.*—§ 1, c. 72, Code; 28 W. Va. 360, 371, 362, 372; *can not go outside of facts shown in bill of exceptions.*—3 W. Va. 394.

DENT, JUDGE:

Malinda Good, widow of Francis Good, deceased, instituted a suit against J. L. Good, administrator of her deceased husband, to recover the possession of certain personal property, claimed by her as a gift from her husband before E. A. Thomas, a justice of the peace of Jackson county. Such proceedings were had that on the 13th day of October, 1891, she recovered judgment for the following property, to wit: Two mares, of the value of one hundred and fifty dollars; one black cow, of the value of fifteen dollars; four spotted hogs, of the value of ten dollars; six pigs, of the value of three dollars; household and kitchen furniture of the value of forty five dollars; ten stands of bees, of the value of thirty dollars; one wagon, of the value of twenty dollars, and twenty dollars damages for the detention thereof and her costs—from which judgment the defendant appealed to the Circuit Court. After a motion to quash the summons had been sustained, for insufficiency, the plaintiff with permission of the court, filed an amended complaint, to the filing of which defendant excepted; but the court overruled the exception and allowed the complaint to be filed. On this issue was made up; and the parties waiving a trial by jury agreed upon the facts and submitted the case to the court; on consideration whereof the court reversed the judgment of the justice and dismissed the action at the plaintiff's costs. Plaintiff applied for and obtained a writ of error and now here insists that the Circuit Court erred in not rendering judgment in her favor for the property sued for and claimed by her.

The following is the agreed state of facts as set out in plaintiff's bill of exceptions, to wit: The said Francis Good died intestate about the 14th day of July, 1891; that the defendant was duly appointed, qualified, and was acting, as administrator, as aforesaid, at the time of the com-

mencement of said action. As such administrator of said Francis Good deceased said defendant came into possession of the goods and chattels sued for and claimed by the plaintiff in said action. The said Francis Good was the husband of said Malinda Good; and they lived together and cohabited as man and wife and continued to live together for at least fifty years next before the death of said Francis Good, who in his lifetime, and while he and the said Malinda Good were living together as man and wife, gave the goods and chattels sued for in this action to the plaintiff, Malinda Good as a gift; said goods and chattels were found by the defendant and came into his possession as administrator, as aforesaid, at the place where said Francis Good died, and within a short time after the death of said decedent; and said Malinda Good lived with said Francis Good, up to the time of his death; at the place where said goods and chattels came into possession of defendant as aforesaid; and at the institution of this action said defendant held and claimed said goods as administrator of said Francis Good, deceased, and now withholds the possession of said goods from said plaintiff as such administrator.

In the case of *Fox* v. *Jones*, 1 W. Va. 217, it was held, that, while a gift from a husband to his wife would be void at law, it would be sustained in equity; that the right of a husband, either with or without a trustee, to make a proper gift or settlement on his wife, is well established. "Whether the estate is derived from him or from a stranger, the husband during his lifetime (if no other has been appointed) will be treated as a trustee for her benefit; and in the event of his death *quoad* all seperate personal estate derived from him during his lifetime, which properly belongs to the wife, in equity his executor or administrator will be treated as a trustee for the wife and enjoined from making any legal disposition of the property in contravention of the trust." I might here add, that, if such administrator refused to deliver her the property on demand, she could maintain an action of detinue for the recovery of the same, as all her legal disabilities are removed by the death of her husband, and she sues, not for a tort committed by her husband, but for the wrong done her by his administrator

in repudiating the trust and unlawfully withholding the property from her, as property belonging to the estate. See *Robinson* v. *Woodford,* 37 W. Va. 377 (16 S. E. Rep. 602); 9 Am. & Eng. Enc. Law, 800.

There can be no question of her right to sue the administrator, if the property belongs to her, whether acquired from her husband or others, if he unlawfully withholds the same from her under the claim, that it is assets in his hands to be administered as the property of the decedent. This was the law of this state, fully recognized and established prior to the passage of the act of 1891, which conferred on her the legal right to acquire property from her husband as from a stranger, providing such acquisition did not interfere with the existing debts and liabilities of her husband. Code, c. 66, s. 2. That, which was heretofore regarded as an equitable estate, was by this provision of the law changed into a legal estate; and her rights with regard thereto were not limited but enlarged.

The defendant in error insists that section 1 of chapter 71 of the Code, which is in these words, to wit: "1. No estate of inheritance or freehold, or for a term of five years in lands, shall be conveyed, unless by deed or will; and no gift of any goods or chattels shall be valid, unless by deed or will or unless actual possession shall have come to and remained with the donee or some person claiming under him. If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession within the meaning of this section"—renders the gift in this case—which is admitted —invalid, because the parties lived together at the time of the gift and continued to live together and in possession of the property up to the death of the donor.

If such a construction of the law is to prevail, then has the legislature in attempting to extend the rights of a married woman taken away those she already possessed. By attempting to clothe her with legal rights it has destroyed her equitable rights and left her without power to acquire property from her husband by parol gift, unless she disposes of it during his lifetime or takes up a residence apart from him. If he gives her any anniversary presents in the

shape of jewelry or other tokens of his affection, she can not call them her own, unless she disposes of them or abjures his residence, bed and board, while he is yet alive. So those things which are intended ever to renew their affection, and unite them more closely together, become wedges under the hammer of the law to force them asunder. The equitable rights of married women, as to gifts bestowed upon them by their husbands, and this law of separate possession, have stood side by side for many years, for the reason that under the common-law the wife's existence was entirely merged in that of her husband, and, while the coverture existed, he alone could have possession of personal property without regard to ownership; and such law was never in any manner intended to relate to her or her property.

The statutory law before referred to not only bestows upon her the separate ownership of property, but also gives her the right of possession thereof at the place of their common residence, as fully and completely as though they lived many miles apart. While section 2, c. 66, of the Code does not repeal section 1, c. 71, of same, neither does said section 2 make said section 1 apply to the newly acquired rights of a married woman, to whom and to which it was in no sense applicable before. Neither should this Court so construe said sections as to deprive her of any rights heretofore enjoyed, or any with which the legislature may have sought to invest her by said chapter 66, but should endeavor, in so far as a liberal construction will permit, to secure to her all those enlarged and natural rights of which she has been so many years unjustly deprived by a strict adherence to an antiquated and barbaric law, not founded on human reason, nor the product of civilization, but which had its origin in an early period of man's existence, when "might made right," and mere brute force was considered superior to virtue, morality and intelligence. All such absurd laws—monstrosities as they are— should have perished with the feudal system or pre-historic man, and should have no place in the Code of an independent and intelligent people; but they have ever been kept alive by the gentle submission of woman on the one hand

and the arrogance, ignorance and selfish indifference of her male offspring on the other.

The great English expounder of these laws says in their justification: "These are the chief legal effects of marriage during coverture, upon which we may observe that even the disabilities which the wife lies under are, for the most part, intended for her protection and benefit. So great a favorite is the female sex, of the laws of England." The apologists for any kind of involuntary servitude or slavery have always sought to justify it on the same pretext that the very "disabilities of the servant or slave were intended, for the most part, for his benefit and protection."

Such disabilities, though sugarcoated with the plea of favoritism, are not accepted freely by the helpless and innocent victims thereof; they would much prefer their natural freedom and a just equality before the law. Civilization in its upward progress is slowly but surely breaking down the harem walls of prejudice and restoring to woman those inherent rights originally bestowed on her by a beneficent Creator, which entitled her, married or unmarried, to recognition by the laws of the land as an intelligent person, equal in all respects to man himself—her debtor for the very existence he possesses and enjoys. It is the duty of this Court not to clog the wheels of tardy justice by a too narrow and technical construction of apparently conflicting laws, but to render them by a careful judicial construction consistent with each other to such an extent as to effect, not to destroy, the noble purpose sought to be attained by their enactment. The two sections referred to above, so construed, will in no wise modify or interfere with the proper operation of each other, but are simply limited to the legislative intent.

The defendant in error insists that the rights of creditors are paramount to the rights of plaintiff. This is undoubtedly true, if justified by the record; but no such question is presented. The gift being established, it devolves on the administrator to show affirmatively that the property is liable to the demands of existing creditors; and, if he fails to do so, such failure will be taken as an an admission, that no such indebtedness existed, or that there were sufficient other assets to satisfy it.

By an examination of section 3, c. 3, Acts 1893, it will appear that the legislature has taken a backward step as to the legal right of a married woman to acquire property from her husband. For what reason does not clearly appear, unless it is to protect husbands against the coercive influence of their wives. Creditors were amply protected under the laws then existing.

The matter of this opinion relating to section 1, c. 71 of the Code, is an expression of private conviction on my part; the majority of the court being of the opinion that the statement of the facts is not sufficient to furnish the necessary information to a proper determination of the questions involved, as it does not appear in what manner and at what time the plaintiff acquired the property claimed by her in this suit. The meager facts being a question of dispute between the opposing counsel as to what they do and do not establish, this Court does not feel justified in rendering a final judgment at this time. but reverses the order of dismissal entered by the Circuit Court and remands the case for a new trial of the matters in controversy according to law.

---

BRANNON, PRESIDENT (*dissenting*):

Before the act of March 14, 1891, at law a married woman could not in any mode take property from her husband, though equity would sustain transfers from him to her in certain cases. So read the common-law and section 3, c. 66, of the Code. *Humphrey* v. *Spencer*, 36 W. Va. 11 (14 S. E. Rep. 410); *McKenzie* v. *Railroad Co.*, 27 W. Va. 306. Chapter 3, Acts 1893, again enacts this incapacity to take from her husband. The act of 1891 removed this incapacity, by giving her capacity to acquire property from her husband by grant or gift, but such gift must be under the law regulating gifts in the case of other persons. Section 1, c. 71, of the Code broadly declares:

"No estate of inheritance or freehold, or for a term of more than five years, in lands, shall be conveyed unless by deed or will; and no gift of any goods or chattels shall be valid, unless by deed or will, or unless actual possession

shall have come to and remained with the donee, or some person claiming under him. If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession within the meaning of this section."

This section prescribes the very manner of acquiring the property interests of which it treats. That is its office. It says that certain estates in lands and gifts of chattels shall not be valid, unless created in certain ways. As to gifts of chattels, they must either be by deed or will, or, if oral, be accompanied by actual possession in the donee as a consummation of title; and if donor and donee reside together possession there shall not be sufficient to consummate the gift. Delivery of possession is necessary to a perfect gift, but it can not operate when the residence is common; and the gift is then abortive, unless by deed or will. It goes to the very essence of title. This is a salutary provision as to gifts. A husband and wife reside together, and the personal property given by the husband to the wife is at the place of common residence. Subsequent creditors of the husband suppose it to be his and extend him credit. A purchaser buys it supposing it to be his. The law defeats the gift, not only as to them, but wholly. There is no title in the wife, even against the administrator or distributees of a dead donor; though it might occur to one at first thought, that it would be good in the latter case. But not so, as it is a want of title. The gift is abortive and passes no title. There is no exception to the prohibition of the statute. The wife must in such case take a deed. She may take under section 2, c. 66, Code 1891, by gift from her husband; but that gift must conform to section 1, c. 71 of the same Code, as in gifts between father and son or other person having common residence.

The married woman's act of 1891 can not be regarded a special act creating an exception to section 1, c. 71; for both are parts of one act—the Code act. To give the married woman's act this effect is to work a repeal of section 1, c. 71 by implication as to gifts between husband and wife whereas both can stand and operate in harmony; and, when this is so, repeals or exceptions by implication can

not be allowed. *State* v. *Enoch*, 26 W. Va. 254. The mission of one statute is to change the former law disabling her from taking; while the mission of the other is to define the manner of acquisition. There is no repugnancy between them. If you say that a gift from the husband with possession at the residence of husband and wife shall be good against subsequent creditors, what a wide door of danger you leave open to the perpetration of fraud upon creditors by fictitious gifts—one of the very doors the statute was intended to close. There is more danger of harm to creditors from such a repeal of the statute than in any other instance. Will you say that such gifts shall not be good as to such creditors? Then you add an exception not in the married woman's act (section 2) which avoids a gift only as to existing creditors. If you make an exception to save creditors, why not make one for subsequent purchasers from the husband? There is as much authority for one as the other.

The case of *Fox* v. *Jones*, 1 W. Va. 205, has no application, because it was in equity, and the gift was upheld on the theory of a reasonable settlement by husband upon the wife, and also because not a reference was made to the statute in question. This is an action of detinue requiring legal title in the plaintiff. *Burns* v. *Morrison*, 36 W. Va. 423 (15 S. E. Rep. 62). The administrator represents existing creditors; for there must be debts for funeral and administration if not for taxes and other considerations. In the one month between the going into operation of the act of 1891 and the death of Good a gift may have been made, its date not appearing. If so, and the gift were valid under chapter 71, § 1, the wife would have legal title, as title in a wife under the enabling act is legal not merely equitable; but, if before the act of 1891, her title would not be legal. But the trouble is that, whenever the gift was made, she has no title, by reason of the fact that the gift was consummated by a possession at the common residence, and void under chapter 71, § 1.

Again, being plaintiff the wife must show the date of the gift to have been at such time under the law, when it was not unquestionably void, as would be the case, if made be-

fore April 1, 1869—the beginning of our first separate estate act. The record says the parties were living together for fifty years before July 14, 1891. We do not know but that some of the property was given to the wife before the separate estate act. As no deed to attest the wife's right is shown, I interpret the agreed facts as showing an oral gift, void under the law; and I would affirm the Circuit Court, as I think we ought to say what the agreed facts show, and decide the case finally for one side or the other.

# CHARLESTON.

